UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GLENN SIMS,

                    Petitioner,

          -vs-                          **No. 15-CV-6621(MAT)**
                                        **DECISION AND ORDER**

PAUL GONYEA,

                    Respondent.

_____

## I.    Introduction

*Pro se* petitioner Glenn Sims ("petitioner" or "Sims") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 claiming that he is being unconstitutionally detained in respondent Paul Gonyea's ("respondent") custody. Petitioner is incarcerated pursuant to a judgment entered against him on February 21, 2012, in New York State Supreme County, Monroe County ("the trial court"), following his guilty plea to one count of Course of Sexual Conduct Against a Child in the First Degree. Petitioner was sentenced to a determinate prison term of nine years, to be followed by five years of post-release supervision.

## II. Factual Background and Procedural History

### A.    The Underlying Crime

Petitioner's convictions arise out of the sexual abuse of his then nine-year-old step-daughter, O.W., beginning in approximately March 2003, and continuing until May 2011, when O.W. reported the abuse to her mother, who contacted the police. *See* Docket No. 5-2

at 88. The ensuing investigation involved O.W. voluntarily making a total of seven successive controlled phone calls to petitioner on June 2, 2011. The calls were recorded by Investigator Nicholas Mazzola of the Rochester Police Department, who testified he did not threaten, coerce, or make any promises to O.W. prior to her agreeing to place the phone calls to petitioner. *See* Docket No. 5-3 at 22. Under Investigator Mazzola's instruction, O.W. did not indicate to petitioner the phone calls were being recorded or that anyone else was listening. *Id.* at 39.

On June 3, 2011, following the controlled calls, petitioner was detained and brought to the Public Safety Building for questioning. Investigator Mazzola had a very brief interaction with petitioner where petitioner acknowledged "his daughter had called him and his mother - her mother had put her up to some things." *Id.* at 28.

### B.   The Suppression Hearing

A Monroe County Grand Jury charged petitioner with one count each of Course of Sexual Conduct Against a Child in the First Degree (Penal Law § 130.75(1)(b)), Predatory Sexual Assault Against a Child (Penal Law § 130.96), Rape in the Third Degree (Penal Law § 130.25(2)), and Endangering the Welfare of a Child (Penal Law § 260.10(1)). Docket No. 5-2 at 127-28.

Petitioner moved before the trial court to suppress the statements he made during the controlled phone calls with O.W. as

involuntary. A suppression hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), was held on October 12, 2011. *See* Docket No. 5-3 at 14. At the *Huntley* hearing, Investigator Mazzola testified that he did not threaten, coerce, or make any promises to O.W. before she agreed to call petitioner. *Id.* at 21-22. Investigator Mazzola further testified that O.W. did not make any threats to petitioner during the controlled calls, and that she did not coerce Petitioner or make any promises to get him to talk to her. *Id.* at 26. Investigator Mazzola also testified to a conversation between himself and petitioner at the Monroe County Public Safety Building on June 3, 2011, wherein petitioner stated that he had received some phone calls from O.W. and that her mother "had put her up to some things." *Id.* at 27-28. On cross-examination, Investigator Mazzola acknowledged that he had suggested to O.W. certain questions she could ask petitioner during the controlled calls. *Id.* at 38-39. Investigator Mazzola further testified on cross-examination that he told O.W. the goal of the controlled calls was to get Petitioner to talk. *Id.* at 42. A recording of the controlled calls was entered into evidence. *Id.* at 26. The defense did not call any witnesses or present any evidence at the *Huntley* hearing. In summation, defense counsel argued that O.W. was acting on behalf of law enforcement when she made the controlled calls. *Id.* at 58. Defense counsel further argued that O.W. made statements such as "come on, talk to me, say

-3-

something, talk to me, say something," and that these statements, combined with the rapid succession of phone calls made by O.W., created a situation "akin to interrogation" such that petitioner felt "compelled to speak." *Id*. at 58-59. Defense counsel urged the trial court to find that, under these circumstances, petitioner was not in "a voluntary position to decline to answer and to decline to make any statements." *Id*. at 60.

Without listening to the recording of the controlled calls that had been entered into evidence, the trial court ruled from the bench and found that, because petitioner was not in custody at the time of controlled calls, the sole issue was whether the standards for controlled calls between an alleged victim and a potential suspect had been met. *Id*. at 61. The trial court explained that the issue of relevancy was reserved for the time of trial and that the court would review the substance of the conversations at that time. *Id*. at 61-62. The trial court found Investigator Mazzola's testimony to be credible and noted that it was largely unrefuted. *Id*. at 62.

Based on Investigator Mazzola's testimony, the trial court concluded that the controlled calls had been undertaken on behalf of the police to further their investigation and that O.W. was acting as a police agent when she made the controlled calls. *Id*. at 65-66. The trial court further found that the recordings were not illegal because consent was obtained from one of the

participants, (i.e., O.W.), and that O.W. did not make any threats that would "create a substantial risk that [petitioner] may or might falsely incriminate himself." *Id*. at 66. The trial court ultimately held that, "subject to admissibility at trial" and "if deemed relevant," the statements made in the controlled calls "are concluded to be voluntary." *Id*. The trial court therefore denied petitioner's motion to suppress the statements in its entirety. *Id*. at 68.

### C.   Guilty Plea and Sentencing

On January 10, 2012, petitioner appeared before the trial court with his attorney and stated that he wished to plead guilty to one count of Course of Sexual Conduct Against a Child in the First Degree in exchange for a promised sentence of nine years of imprisonment followed by five years of post-release supervision. Responding to the trial court's questioning, petitioner confirmed his wish to plead guilty, acknowledged he had discussed the decision with his attorney, and confirmed he understood by pleading guilty he was waiving his right to a trial where the prosecution would hold the burden of proving his guilt beyond a reasonable doubt. Petitioner confirmed his guilty plea was made "freely and voluntarily," and that he was not being forced by anyone to plead guilty. Petitioner also confirmed he was not under the influence of any drugs, alcohol, or medicine, and that he "fe[lt] okay and ha[d] a clear mind." Docket No. 5-3 at 77. Petitioner then stated to the

court that between March 7, 2003 and June 22, 2006, in the City of Rochester, he had vaginal sexual intercourse with his step-daughter, O.W., who was less than thirteen-years old, and that three months later, he touched her breasts for his own sexual gratification. He withdrew his previous not-guilty plea and pleaded guilty to one count of Course of Sexual Conduct Against a Child in the First Degree. *Id.* at 74-83. He then was sentenced as promised.

### D.    **Post-conviction Motion to Vacate**

Prior to perfecting his direct appeal, petitioner moved *pro se* to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 ("§440.10").  Petitioner argued that new evidence had been discovered that, had it been known to him previously, would have caused him not to take a plea deal and that the indictment was defective because it was insufficiently specific regarding the dates of his alleged crimes.  *See* Docket No. 5-2 at 3-15.  Petitioner also argued that trial counsel had been ineffective by (1) failing to subpoena the victim's medical records, (2) failing to "follow up" on the trial court's failure to issue a written decision on an omnibus motion filed by petitioner; and (3) failing to consult with medical experts.  *See id*.  The trial court denied petitioner's § 440.10 motion on October 6, 2014.  *See id*. at 108.  The trial court found that petitioner had failed to identify the new evidence he claimed had been discovered and that his ineffective assistance of counsel claims were either

"based upon conclusory and unsubstantiated allegations" or better suited for review upon direct appeal. *Id.* Petitioner did not seek leave to appeal this decision to the New York State Appellate Division, Fourth Department (the "Appellate Division").

### E. Direct Appeal

Petitioner appealed his conviction to the Appellate Division in a counseled brief filed December 17, 2014, arguing that his sentence was unduly harsh and excessive. Docket No. 5-2 at 109-120. Petitioner filed a supplemental *pro se* brief in which he argued that: (1) the indictment was defective because it was insufficiently specific regarding the dates of the alleged crimes, (2) trial counsel was ineffective by having failed to obtain the victim's education and medical records, by having failed to obtain an expert witness, and by having failed "to raise any objection when the judge gave an unusual look to [Petitioner's] attorney indicating he wasn't going to grant subpoena's [sic]"; and (3) that the trial court erred in denying his suppression motion without listening to the audio recording of the controlled calls. *Id.* at 136-157.

On June 12, 2015, the Appellate Division unanimously affirmed petitioner's conviction. *People v. Sims*, 129 A.D.3d 1509 (4th Dep't 2015). The Court agreed with petitioner's argument that the waiver of petitioner's right to appeal was invalid inasmuch as there is no indication in the record that the lower court obtained a knowing

and voluntary waiver of that right at the time of the plea. However, the Appellate Division rejected petitioner's argument that the sentence he received was unduly harsh or severe. Furthermore, the Appellate Division rejected petitioner's contention that the indictment was defective for lack of specificity with respect to the time frames for the alleged crimes on two grounds. First, petitioner's guilty plea waived his right to make such a challenge. Second, when the crime charged in the indictment is a continuing offense, as it was in petitioner's case, the usual requirements of specificity in regards to time do not apply. The Court concluded the time frames supplied in the indictment were specific enough to satisfy due process requirements. The Appellate Division deemed petitioner's argument that he was denied effective assistance of counsel to be meritless. Finally, the Court found there was no error in the lower court's decision following the *Huntley* hearing, as there was no showing of the relevance of petitioner's recorded statements to the issue of voluntariness. *Id.* at 184-85.

Petitioner sought leave to appeal the Appellate Division's decision to the New York Court of Appeals (the "Court of Appeals"). Docket No. 5-2 at 187. The Court of Appeals denied petitioner's request on August 28, 2015. *Id.* at 190.

**F.   The Instant Petition**

Petitioner commenced the instant action on October 12, 2015. Docket No. 1. Petitioner asserts the following claims in his

petition: (1) the indictment was defective because it was insufficiently specific with respect to the dates of the alleged crimes; (2) he was deprived of the effective assistance of counsel because counsel failed to inform him of his right to testify before the grand jury, failed to obtain the victim's medical records, failed to investigate the fact that petitioner and the victim's mother were going through a contentious divorce at the time his criminal conduct was reported to the police, and failed to take unspecified action related to the fact that the victim had allegedly previously accused another individual of rape; and (3) the trial court improperly denied petitioner's motion to suppress the statements he made in the controlled calls without listening to the audio recording.

## III. Discussion

### A. Standard of Review

"Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (internal quotation omitted). "The question is 'not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively

unreasonable in doing so.'" *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002)).  "The petition may be granted only if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

### B.   Sufficiency of the Indictment

Petitioner's first argument is that the indictment was constitutionally insufficient because it did not identify with specificity the dates on which he allegedly committed his crimes. Petitioner particularly alleges that "the dates [in the indictment] . . . had nothing to do with the alleged crimes but rather these dates are these laws became enforceable [sic]."  Docket No. 1 at 6. Petitioner also states that he "was not give[n] an opportunity to testify at the grand jury."  *Id.*

In opposition to the petition, respondent contends that petitioner's claims related to the sufficiency of the indictment are procedurally barred because they were decided on an independent and adequate state law ground, are not cognizable on federal habeas review, and are without merit in any event.  For the reasons set forth below, the Court agrees.

## 1. Independent and Adequate State Law Grounds

"The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus" and "applies whether the state law ground is substantive or procedural." *Id.* (internal quotation omitted). Accordingly, "[i]f a state court clearly and expressly states that its judgment rests on a state procedural bar[,] this constitutes an independent and adequate state ground, and the federal court must deny habeas relief." *Green v. Keyser*, No. 15-CV-00932 TPG, 2017 WL 5125533, at *6 (S.D.N.Y. Nov. 1, 2017) (internal quotation omitted).

In this case, the Appellate Division expressly stated that petitioner's challenge to the sufficiency of the indictment was "waived by his plea of guilty." *Sims*, 129 A.D.3d at 1510. The Appellate Division's determination was based on state law, as evidenced by the court's citation to New York statutes and cases. *See id.* "This decision acts, therefore, as a procedural bar to

-11-

consideration of the issue on habeas review." *Nordahl v. Rivera*, No. 08 CIV. 5565 KMK LMS, 2010 WL 9444862, at *7 (S.D.N.Y. Apr. 7, 2010), *report and recommendation adopted*, 2013 WL 1187478 (S.D.N.Y. Mar. 21, 2013) (claim of defects in grand jury proceedings barred by independent and adequate state law grounds where Appellate Division found claim waved by guilty plea); *see also Hayes v. Lee*, No. 11-CV-1365 KMK PED, 2015 WL 5943677, at *31 (S.D.N.Y. Oct. 13, 2015) (petitioner's waiver of rights in connection with guilty plea "constitutes an independent and adequate ground for the denial of claims").

"Absent a showing of cause and prejudice, it is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas." *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002). In this case, petitioner has made no effort to show cause or prejudice. Nor could he do so, because, as discussed below, his claim is without merit. Accordingly, the Court finds that petitioner's claims related to the sufficiency of the indictment are procedurally barred by independent and adequate state law grounds.

### 2. Cognizability and Merits of the Claim

Respondent also argues that petitioner's claims related to the sufficiency of the indictment are not cognizable on federal habeas review and that, in any event, his claims are meritless. For the reasons discussed below, the Court finds that petitioner's claim

that he was prevented from testifying before the grand jury is not cognizable on federal habeas review. With respect to petitioner's claim that the indictment was unconstitutionally vague, the Court finds that this claim is cognizable on federal habeas review, but that it lacks merit.

"[C]laims of deficiencies in . . . state grand jury proceedings" are not "cognizable in a habeas corpus proceeding" in federal court. *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (citing *United States v. Mechanik*, 475 U.S. 66 (1986)). As a corollary to this rule, "it is also well-settled that challenges to the sufficiency of an indictment are generally not cognizable on habeas review." *United States v. Logan*, 845 F. Supp. 2d 499, 518 (E.D.N.Y. 2012). Rather, claims based on a defective indictment are only reviewable by a habeas court "if the indictment fails to satisfy the basic due process requirements: notice of "the time, place, and essential elements of the crime." *Scott v. Superintendent, Mid-Orange Corr. Facility*, No. 03-CV-6383, 2006 WL 3095760, at *6 (E.D.N.Y. Oct.31, 2006) (quoting *Carroll v. Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988)).

Turning first to petitioner's claim that he was not given the opportunity to testify before the grand jury, "a defendant's right to testify before the grand jury is not a federal constitutional right; rather, it is a statutorily created right in New York." *Lucius v. Filion*, 431 F. Supp.2d 343, 346 (W.D.N.Y. 2006).

Accordingly, petitioner's claim "that he was denied his right to testify before the grand jury . . . is not cognizable on federal habeas review because the right to testify before the grand jury is not a matter of federal constitutional law." *Id*.

Turning next to petitioner's claim that the indictment was unconstitutionally vague with respect to the dates of his alleged crime, this claim is cognizable on federal habeas review because petitioner claims he was not adequately informed of the time of the alleged crime, in violation of his due process rights. "The sufficiency of a state indictment cannot form the basis for the issuance of a writ of habeas corpus unless the indictment falls below basic constitutional standards." *Carroll v. Hoke,* 695 F.Supp. 1435, 1438 (E.D.N.Y. 1988) (citations omitted). These standards ensure that the petitioner has the opportunity to prepare a sufficient defense by requiring that an indictment inform the accused of the time, place, and essential elements of the offense. *DeVonish v. Keane*, 19 F.3d. 107, 108-09 (2d Cir. 1994) (citations omitted). Here, petitioner's claim fails on the merits. An indictment need only state the time and place of a charged crime "in approximate terms." *United States v. Frias*, 521 F.3d 229, 235 (2d Cir. 2008).

In this case, the indictment accused petitioner, being eighteen years or more, of engaging in "two or more acts of sexual conduct. . . with another person less than thirteen years old"

over a period of time not less than three months in duration, between March 7, 2003, and June 22, 2006. Docket No. 5-3 at 127. These alleged acts resulted in the charge of Course of Sexual Conduct Against a Child in the First Degree (P.L. § 130.75(1)(b)). The continued acts of sexual conduct performed between June 23, 2006 and March 6, 2007 resulted in the charge of Predatory Sexual Assault Against a Child (P.L. §130.96). The Monroe County Grand Jury also indicted petitioner on one count of Rape in the Third Degree (P.L. § 130.25(2)) for engaging in sexual intercourse with another person less than seventeen years-old on or about March 6, 2011, when himself being twenty-one years-old or more. And finally, petitioner was indicted on one count of Endangering the Welfare of a Child (P.L. § 260.10(1) for knowingly acting in a manner likely to be injurious to the physical, mental, or moral welfare of child less than seventeen years old by "touching [the child's] breasts and/or touching her vagina, and/or engaging in oral sexual conduct with her, and/or sexual intercourse with her," between March 7, 2007, and March 6, 2011. Docket No. 5-3 at 128.

In this case, the time periods of the indictment ranged from nine months for the charge of Predatory Sexual Assault Against a Child, to 48 months for the charge of Endangering the Welfare of a Child. Similar time periods, as well as much longer time periods, have been upheld in analogous cases involving child sexual abuse. *See People v. Errington,* 121 A.D.3d 1553, 1554 (4th Dep't

-15-

2014)(five years); *People v. Green*, 17 A.D.3d 1076, 1077 (4th Dep't 2005)(three years); *People v. Furlong*, 4 A.D.3d 839 (4th Dep't 2004)(six years).

Moreover, and as respondent argues, under federal law, petitioner's voluntary and knowing guilty plea waived his claims regarding alleged defects in the state grand jury process. Petitioner "admitted his guilt when he entered his guilty plea, and thus any errors in the grand jury proceedings were rendered harmless." *Jordan v. Dufrain*, No. 98 CIV. 4166(MBM), 2003 WL 1740439, at *3 (S.D.N.Y. Apr. 2, 2003); *see also Hutchings v. Herbert*, 260 F. Supp.2d 571, 578 (W.D.N.Y. 2003) ("Since [the petitioner] admitted to all of the factual elements of the charge against him by entering a plea of guilty, any error in the proceeding which led to his indictment is rendered harmless and is not amenable to habeas review."). In this case, petitioner has not argued that his plea was not knowing and voluntary, nor is there any support in the record for that conclusion. Accordingly, petitioner's claims related to the grand jury proceedings also must fail on these grounds.

### C. Ineffective Assistance of Trial Counsel

Petitioner next argues that he was deprived of the effective assistance of counsel. "The Sixth Amendment requires effective assistance of counsel at [the] critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

"Pursuant to the well-known two-part test of *Strickland v. Washington* . . . a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241, (2009)).

Here, petitioner identifies the following as trial counsel's alleged errors: (1) trial counsel failed to inform him of his right to testify before the grand jury; (2) trial counsel failed to obtain the victim's medical records; (3) trial counsel failed to investigate the fact that petitioner and the victim's mother were going through a contentious divorce at the time his criminal conduct was reported to the police; and (4) trial counsel failed to take unspecified action related to the fact that the victim had allegedly previously accused another individual of rape.

In opposition to the petition, respondent contends that petitioner's ineffective assistance of counsel claim is barred from federal habeas review "because it concerns counsel's representation prior to the entry of petitioner's guilty plea, and petitioner does not allege that counsel's actions affected the voluntary and intelligent character of his plea." Docket No. 5-1 at 21. Respondent further argues that petitioner's complaints about

counsel's performance are meritless and that, apart from the claim that counsel should have obtained the victim's medical records, are unexhausted. For the reasons discussed below, the Court finds that petitioner has not demonstrated his entitlement to habeas relief on the basis of ineffective assistance of counsel.

## 1. Effect of Petitioner's Guilty Plea

As a threshold matter, petitioner's knowing and voluntary guilty plea in this matter constitutes a waiver of his complaints regarding trial counsel's conduct prior to entry of that plea. "A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see also Beckary v. Chappius*, No. 11-CV-00850 MAT, 2012 WL 3045691, at *10 (W.D.N.Y. July 25, 2012) ("a habeas petitioner's unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea").

In this case, petitioner has not argued that trial counsel provided him with constitutionally deficient advice related to his decision to plead guilty, but instead takes issue with trial

counsel's actions leading up to this decision. Specifically, petitioner argues trial counsel failed to inform him of his right to testify before the grand jury and that she failed to properly pursue certain avenues of investigation.

With respect to petitioner's claim that trial counsel failed to inform him of his right to testify before the grand jury, this claim is unrelated to petitioner's ultimate decision to plead guilty and therefore is barred from review. Similarly, petitioner's claims related to counsel's alleged lack of preparation and interest in fighting for petitioner do not relate to the voluntariness of the guilty plea and are therefore also barred from consideration on federal habeas review. *See, e.g., Beckary*, 2012 WL 3045691 at *10 (claims that trial counsel was ineffective because he failed to retain a medical expert to determine the cause of victim's injuries and failed to advise the petitioner of available defenses were barred from review by guilty plea); *James v. Smith*, No. 9:12-CV-857 FJS/ATB, 2013 WL 4519773, at *9 (N.D.N.Y. Aug. 26, 2013) ("Petitioner's arguments that trial counsel was ineffective in pre-plea representation, *e.g.*, by not conducting further investigation into whether the victim suffered 'physical injury' was an antecedent claim not affecting the voluntariness of his guilty plea. Such claims are effectively barred from consideration in a habeas proceeding by *Tollett* and its progeny."); *Wimes v. Conway*, No. 10-CV-00601T, 2011 WL 5006762, at *3 (W.D.N.Y.

Oct. 20, 2011) ("Petitioner's ineffective assistance of counsel claim alleges that counsel committed errors related to counsel's failure to investigate certain evidence (with respect to a spent shell casing) and for failing to investigate alleged alibi witnesses. Because the instant claim does not relate to the voluntariness of the plea itself, the claim is barred from review by this Court.") (internal citation omitted). Petitioner's claims are therefore barred from federal habeas review.

### 2. Failure to Exhaust

In addition to being barred from federal habeas review by petitioner's guilty plea, the majority of petitioner's ineffective assistance of counsel claims are also not appropriate for review by this Court because petitioner failed to exhaust them. It is well-established that a state inmate who seeks federal habeas review must first exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1). "In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error." *Ortiz v. Heath*, No. 10-CV-1492(KAM), 2011 WL 1331509, at *6 (E.D.N.Y. Apr. 6, 2011). In this case, petitioner failed to raise in state court his claims that trial counsel was ineffective for having failed to inform him of his right to testify before the grand jury, failed to investigate the contentious divorce between petitioner and the victim's mother, and failed to take some unspecified action

related to the fact that the victim allegedly made a prior rape allegation against a former boyfriend.

As respondent seems to concede, under New York law, petitioner could potentially raise his unexhausted claims in a motion under § 440.10. "[A] district court faced with a habeas petition containing unexhausted claims generally has three options." *Ortiz*, 2011 WL 1331509, at *14. The Court may (1) dismiss the unexhausted claims without prejudice, (2) under limited circumstances, stay the petition and hold it in abeyance while the petitioner returns to state court and exhausts the claims at issue, or (3) if the unexhausted claim is plainly meritless, deny it on the merits. *See id*. Here, for the reasons discussed below, the Court finds that petitioner's unexhausted ineffective assistance of counsel claims are plainly meritless. Accordingly, they are denied.

### 3. Merits of Petitioner's Ineffective Assistance of Counsel Claims

As discussed above, in order to succeed on his ineffective assistance of counsel claim, petitioner must show both that counsel's performance was defective and that he was prejudiced by the errors. Petitioner cannot meet this standard.

Considering first petitioner's sole exhausted claim, that counsel should have obtained O.W.'s medical records, the record conclusively establishes that counsel in fact attempted to do so. On December 28, 2011, counsel submitted motion papers asking the trial court to issue subpoenas for a variety of records, including

the records from the hospital where O.W. was examined after reporting petitioner's criminal conduct; over eight years of medical records from O.W.'s primary care physician; and O.W.'s education records. *See* Docket No. 5-2 at 57-58. The trial court never ruled on this motion because petitioner pleaded guilty on the return date. Trial counsel cannot be faulted for having failed to obtain records that she made appropriate, affirmative efforts to obtain.

Turning to petitioner's unexhausted claim that trial counsel failed to take some unspecified action related to O.W.'s prior rape accusation against a former boyfriend, again, this claim is wholly inconsistent with the record. Trial counsel affirmatively sought to subpoena the Rochester Police Department's records related to the investigation of that allegation. *Id.* at 58. In her accompanying affirmation, trial counsel stated that she sought this information to demonstrate that O.W. had a "prior history of fabricating rape charges." *Id.* at 62. It is therefore clear from the record that trial counsel was investigating O.W.'s prior allegation of rape and was prepared to use that prior allegation in defending petitioner. It is not clear to the Court what more petitioner contends trial counsel could or should have done with respect to O.W.'s prior rape accusation, nor does the Court find any deficiency in trial counsel's conduct.

With respect to petitioner's contention that trial counsel did not adequately investigate the fact that he was involved in a contentious divorce with O.W.'s mother, it is once again unclear to the Court what petitioner argues counsel could or should have done. Counsel was certainly aware, having been informed by petitioner, that he and O.W.'s mother were in the process of divorcing and that the proceedings were acrimonious. Petitioner does not identify any additional information that counsel should have allegedly uncovered, nor does he state how any additional information would have changed the outcome of the proceeding or impacted his decision to plead guilty.

Turning finally to petitioner's claim that trial counsel failed to advise him of his right to testify before the grand jury, "[d]istrict courts in this Circuit have repeatedly held that a claim of a defective grand jury proceeding in the state court, albeit within the confines of an ineffective assistance of counsel claim, is not cognizable on federal habeas corpus." *Gomez v. Lempke*, No. 09-CV-0086 MAT, 2011 WL 197425, at *5 (W.D.N.Y. Jan. 20, 2011); *see also Affser v. Murray*, No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("counsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance"). Moreover, petitioner has not plausibly alleged that he would or could have provided testimony to the grand jury that would have resulted in his not being indicted.

Accordingly, he has not shown that any prejudice resulted from this alleged error by counsel.

Trial counsel's alleged errors, considered both individually and in total, do not support the conclusion that petitioner was deprived of effective legal assistance. Accordingly, there is no basis for this Court to grant petitioner habeas relief.

### D. The Trial Court's Resolution of the Suppression Motion

Petitioner's final contention is that the trial court erred in resolving his suppression motion without listening to the audio recording of the controlled calls. The Appellate Division rejected this argument on the basis that "there was no showing that the content of defendant's statements was relevant to the issue of voluntariness." *Sims*, 129 A.D.3d at 1510. The Court finds that the Appellate Division's ruling was neither contrary to nor an unreasonable application of clearly established federal law.

Petitioner has not identified the particular constitutional rights he contends were violated by the trial court's action. However, there are "two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment." *Dickerson v. United States*, 530 U.S. 428, 433 (2000). The test for voluntariness "examines whether a defendant's will was overborne by the circumstances surrounding the giving of a confession" and "takes

into consideration the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Id.* at 434 (internal citations and quotation omitted).

In this case, the state courts reasonably concluded that petitioner's statements in the controlled calls were voluntary. The uncontroverted evidence presented at the *Huntley* hearing showed that on June 2, 2011, Investigator Mazzola met with O.W. at the Monroe County District Attorney's Office and asked her if she was willing to make the controlled calls to petitioner, and O.W. agreed. Docket No. 5-3 at 21. Investigator Mazzola made no promises to O.W. in exchange for her placing the calls to petitioner, nor was O.W. threatened or coerced in any way. *Id.* at 22. Prior to making the calls, Investigator Mazzola told O.W. he "wanted her to call her father and [he] wanted her to ask questions to talk about the investigation itself." *Id.* at 24. Investigator Mazzola provided O.W. with suggested questions she could ask Petitioner relevant to the investigation and advised O.W. she should not indicate that the police were listening to the conversation. *Id.* at 26.

O.W. then made a series of seven controlled calls to Petitioner from her mother's phone, while Investigator Mazzola listened and recorded the calls. Petitioner answered five of the seven calls. Nothing in the record supports the conclusion that petitioner's will was overborne, including O.W.'s alleged

exhortations for petitioner to speak to her and answer her questions. *See United States v. Anderson*, No. 10-CR-6128, 2012 WL 3648189, at *2 (W.D.N.Y. May 29, 2012) ("It is settled that a 'coercive atmosphere' is lacking when . . . speak[ing] to someone [an individual] considers a friend or loved one.").

Petitioner argues that, had the trial court listened to the audio recording, it would have "show[n] that [he] did not know what [O.W.] was talking about and prove[d] [his] innocence." Docket No. 1 at 7. Petitioner's argument is irrelevant. The purpose of the *Huntley* hearing was not to determine guilt or innocence, or to determine whether petitioner's statements were even relevant to the charges against him. The sole purpose of the *Huntley* hearing was to ascertain whether the statements had been involuntarily made. Petitioner has made no showing that the contents of the calls would have changed the trial court's ruling or that the trial court otherwise lacked sufficient information to rule on the suppression motion. Accordingly, petitioner has not shown that habeas relief is warranted.

## IV. Conclusion

For the foregoing reasons, the petition (Docket No. 1) is denied and dismissed. No certificate of appealability shall be issued because petitioner has not made the showing required to satisfy 28 U.S.C. § 2253(c)(2), i.e., that "reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and therefore the Court denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 445-46 (1962). Any application for leave to appeal *in forma pauperis* must be made to the Second Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(1), (4), and (5). The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          April 19, 2018